RECORD NO. 13-2007

_____

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

_____

**Richard C. Weidman,**
**Plaintiff/Appellant,**

**v.**

**Exxon Mobil Corporation, et al.**
**Defendants/Appellees.**

_____

**On Appeal from the United States District Court**
**for the Eastern District of Virginia, Alexandria Division**

_____

**BRIEF OF THE APPELLEES**
**Exxon Mobil Corporation, et al.**

_____

Thomas P. Murphy (VSB No. 30765)
Arthur E. Schmalz (VSB No. 36014)
Ryan M. Bates (VSB No. 74661)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
Telephone:  (703) 714-7400
Facsimile:  (703) 714-7410

*Counsel for the Defendants-Appellees*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 13-2007            Caption:  Richard Weidman v. Exxon Mobil Corporation, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Appellee Exxon Mobil Corporation makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?        Yes

2.      Does party/amicus have any parent corporations?                                  No
        If yes, identify all parent corporations, including grandparent and great-
        grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held
        corporation or other publicly held entity?                                        No
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity
        that has a direct financial interest in the outcome of the litigation
        (Local Rule 26.1(b))?                                                             No
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)        No
        If yes, identify any publicly held member whose stock or equity value could
        be affected substantially by the outcome of the proceeding or whose claims the
        trade association is pursuing in a representative capacity, or state that there is no
        such member:

6.      Does this case arise out of a bankruptcy proceeding?                              No
        If yes, identify any trustee and the members of any creditors' committee:

Appellees Clarion E. Johnson, Jeffrey Woodbury, Victoria M. Weldon, Stephen D. Jones, Kent Dixon, F. Bud Carr, Daniel Whitfield, Jeremy Sampsell, Gerard Monsivaiz, and Meghan Hasson make the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?    No

2.  Does party/amicus have any parent corporations?    No
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    No
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    No
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    No
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    No
    If yes, identify any trustee and the members of any creditors' committee:

Respectfully submitted,

s/ *Thomas P. Murphy*

Thomas P. Murphy (VSB No. 30765)
Arthur E. Schmalz (VSB No. 36014)
Ryan M. Bates (VSB No. 74661)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
Telephone:  (703) 714-7400
Facsimile:  (703) 714-7410

*Counsel for the Defendants-Appellees*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**CORPORATE DISCLOSURE STATEMENT** ............................................................ ii

**TABLE OF AUTHORITIES** ............................................................................ vii

I.      **JURISDICTIONAL STATEMENT** ..............................................................1

II.     **STATEMENT OF ISSUES PRESENTED FOR REVIEW** ...............................2

III.    **STATEMENT OF THE CASE** ..................................................................3

     **A.**     **PROCEDURAL HISTORY** .................................................................3

     **B.**     **FACTUAL STATEMENT** ...................................................................4

IV.    **SUMMARY OF THE ARGUMENT** ............................................................9

V.      **ARGUMENT** ......................................................................................13

     A.     STANDARD OF REVIEW ....................................................................13

     B.     WEIDMAN FAILS TO STATE A CLAIM FOR FRAUD ..................................14

         1.     Weidman fails to allege the elements of fraud with particularity.............14

             a.     No specific allegations against the ten individual Defendants ....................................................................15

             b.     Allegations against ExxonMobil are also bare ..............................16

         2.     Because Weidman claims the anti-retaliation policy is part of an employment contract, the source of duty/economic loss doctrine bars any fraud claim arising from it........................................17

         3.     No misrepresentation of a material fact...................................19

         4.     The fraud claim is barred by the statute of limitations and lack of reasonable reliance...................................................................19

     C.     THE DISTRICT COURT PROPERLY DISMISSED WEIDMAN'S CLAIM FOR "INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS".................................24

         1.     The Complaint fails to state an Intentional Infliction claim .....................24

         2.     Weidman's new argument in "Issue 5" was not raised below and, therefore, cannot be considered on appeal..................................30

iv

3.      Even if considered by this Court, Weidman's new argument is incorrect .......................................................................30

D.      WEIDMAN'S COMPLAINT FAILS TO STATE A CLAIM FOR "PERSONAL INJURY" ...............................................................33

E.      WEIDMAN'S INJURY CLAIMS IN COUNTS II AND III ARE BARRED BY VIRGINIA'S WORKERS' COMPENSATION ACT ........................34

F.      WEIDMAN FAILS TO STATE A CLAIM FOR WRONGFUL DISCHARGE/ BREACH OF CONTRACT ..............................................................38

1.      Weidman's wrongful discharge claim fails because he has not identified, and cannot identify, any Virginia statute with a public policy that was violated by his discharge ....................................39

a.      Weidman fails to identify any Virginia statute in the Complaint...................................................................41

b.      The statutes identified in Weidman's briefing at the trial court level do not contain the sufficient public policy to support a *Bowman* claim ............................................41

c.      The statutes identified in Weidman's appellate brief do not support a claim for wrongful discharge .........................45

2.      Weidman's employment was "at will" and thus there was no implied contract between him and ExxonMobil .......................47

G.      THE DISTRICT COURT PROPERLY DENIED WEIDMAN'S MOTION FOR REMAND ........51

1.      Standard for fraudulent joinder ..................................................51

2.      Allegations against non-diverse Defendants...............................54

a.      Gerard Monsivaiz.............................................................54

b.      Jeremy Sampsell ..............................................................54

c.      Meghan Hasson................................................................55

3.      The Court should ignore additional facts asserted in Weidman's brief..............................................................................................56

4.      No possibility of recovery against non-diverse Defendants .......57

5.      Personal jurisdiction has no bearing on the removal .................61

**VI.    CONCLUSION** ......................................................................................**62**

**CERTIFICATE OF COMPLIANCE** ...........................................................**63**

**CERTIFICATE OF SERVICE** ..................................................................**64**

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*17th St. Assocs., LLP v. Mkt. Int'l Ins. Co.*,
   373 F. Supp. 2d 584 (E.D. Va. 2005) ............................................................... 53

*Ackerman v. Northwestern Mut. Life Ins. Co.*,
   172 F.3d 467 (7th Cir. 1999) ........................................................................... 15

*AIDS Counseling & Testing Ctrs. v. Grp. W TV, Inc.*,
   903 F.2d 1000 (4th Cir. 1990) ......................................................................... 51

*Ainsworth v. Loudoun Cnty. Sch. Bd.*,
   851 F. Supp. 2d 963 (E.D. Va. 2012) ........................................................ 25, 28

*Barger v. Gen. Elec. Co.*,
   599 F. Supp. 1154 (W.D. Va. 1984) ................................................................. 50

*Barksdale v. Nationwide Mut. Ins. Co.*,
   No. 4:06CV00043, 2007 U.S. Dist. LEXIS 4641 (W.D. Va. Jan. 23,
   2007) ............................................................................................................ 20, 22

*Bass v. E.I. Dupont De Nemours & Co.*,
   28 F. App'x 201 (4th Cir. 2002) ...................................................................... 48

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. *passim*

*Bender v. Suburban Hosp., Inc.*,
   159 F.3d 186 (4th Cir. 1998) ........................................................................... 36

*Bessinger v. Food Lion, LLC*,
   115 Fed. App'x 636 (4th Cir. Nov. 19, 2004), *cert. denied*, 544 U.S. 1044
   (2005) ............................................................................................................... 53

*Boss v. Nissan N. Am., Inc.*,
   228 F. App'x 331 (4th Cir. 2007) .................................................................... 52

*Bowman v. State Bank of Keysville*,
   331 S.E.2d 797 (Va. 1985) ........................................................................ *passim*

*Brown v. Reed*,
   165 S.E.2d 394 (Va. 1969) ................................................................35

*Calquin v. Doodycalls Fairfax VA LLC*,
   Civil Action No. 1:09cv543, 2009 U.S. Dist. LEXIS 83936 (E.D. Va.
   Sept. 11, 2009) .............................................................................48

*Cavallini v. State Farm Mut. Auto Ins. Co.*,
   44 F.3d 256 (5th Cir. 1995) .....................................................56, 57

*Chesapeake & Potomac Tel. Co. v. Dowdy*,
   365 S.E.2d 751 (Va. 1978) ............................................................ 32-33

*City of Virginia Beach v. Harris*,
   523 S.E.2d 239 (Va. 2000) ...................................................40, 41, 42

*Clark v. Nat'l Shipping Co. of Saudi Arabia*,
   552 F. Supp. 2d 576 (E.D. Va. 2008) ..............................................53

*Combs v. Virginia Elec. & Power Co.*,
   525 S.E.2d 278 (Va. 2000) ............................................................34

*Connor v. Bragg*,
   123 S.E.2d 393 (Va. 1962) ............................................................35

*County of Giles v. Wines*,
   546 S.E.2d 721 (Va. 2001) ............................................................47

*Davis v. Bacigalupi*,
   711 F. Supp. 2d 609 (E.D. Va. 2010) ..............................................49

*Dray v. New Mkt. Poultry Prods., Inc.*,
   518 S.E.2d 312 (Va. 1999) ......................................................40, 44

*Duncan v. Exxon Mobil*,
   968 F. Supp. 2d 996 (E.D. Ark. 2013)........................................ 60-61

*Filak v. George*,
   594 S.E.2d 610 (Va. 2004) ............................................................18

*Flores v. Ethicon, Inc.*,
   563 F. App'x 266 (4th Cir. 2014) ............................................... 52-53

*Ford Motor Co. v. Boomer*,
    736 S.E.2d 724 (Va. 2013) ................................................................32

*Frazier v. Colonial Williamsburg Found.*,
    574 F. Supp. 318 (E.D. Va. 1983) .....................................................50

*Gaiters v. Lynn*,
    831 F.2d 51 (4th Cir. 1987)................................................................25

*Givens v. O'Quinn*,
    121 F. App'x 984 (4th Cir. 2005) ................................................. 36-37

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) .............................................................52

*Harris v. Kreutzer*,
    624 S.E.2d 24 (Va. 2006) ............................................................27, 28

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) .............................................................14

*Hatfill v. New York Times Co.*,
    416 F.3d 320 (4th Cir. 2005) .............................................................26

*Hughes v. Moore*,
    197 S.E.2d 214 (Va. 1973) ...........................................................31, 32

*Johnson v. PSI Pizza, Inc.*,
    No. 3:11-1698, 2012 U.S. Dist. LEXIS 136826 (M.D. Pa. Sept. 25, 2012) ......29

*Jones v. Shooshan*,
    855 F. Supp. 2d 594 (E.D. Va. 2012) ..........................................15, 16

*Judy v. Nat'l Fruit Product Co., Inc.*,
    40 Va. Cir. 244 (City of Winchester 1996) ........................................46

*Karpel v. Inova Health Sys. Servs.*,
    134 F.3d 1222 (4th Cir. 1998) ...................................................4, 30, 45

*Kenny v. Bank of Am., N.A.*,
    Civ. A. No. 4:11CV120, 2011 WL 6046452 (E.D. Va. Dec. 5, 2011) ..............53

*Kjellstrom & Lee, Inc. v. Saunders*,
   594 S.E.2d 281 (Va. Ct. App. 2004)....................................................36

*Lawrence Chrysler Plymouth Corp. v. Brooks*,
   465 S.E.2d 806 (Va. 1996) .............................................................41

*Legg v. Wyeth*,
   428 F.3d 1317 (11th Cir. 2005) ......................................................56

*Leverton v. Alliedsignal, Inc.*,
   991 F. Supp. 486 (E.D. Va. 1998) ............................................39, 44

*Linnin v. Michielsens*,
   372 F. Supp. 2d 811 (E.D. Va. 2005) .............................................52

*Lucker v. Cole Vision Corp.*,
   Civ. A. No. 7:05CV00126, 2005 WL 2788882
   (W.D. Va. Oct. 26, 2005).........................................................43, 44

*Marshall v. Manville Sales Corp.*,
   6 F.3d 229 (4th Cir. 1993) .............................................................52

*Mayes v. Rapoport*,
   198 F.3d 457 (4th Cir. 1999) ..........................................................51

*McCoy v. Norfolk So. Ry. Co.*,
   858 F. Supp. 2d 639 (S.D. W.Va. 2012)..........................................56

*McDermott v. Reynolds*,
   530 S.E.2d 902 (Va. 2000) .............................................................33

*McGreevy v. Racal-Dana Instruments, Inc.*,
   690 F. Supp. 468 (E.D. Va. 1988) ..................................................35

*Metrocall of Delaware, Inc. v. Continental Cellular Corp.*,
   437 S.E.2d 189 (Va. 1993) .......................................................22, 23

*Michael v. Sentara Health Sys.*,
   939 F. Supp. 1220 (E.D. Va. 1996) ................................................50

*Middlekauff v. Allstate Ins. Co.*,
   439 S.E.2d 394 (Va. 1994) .............................................................35

*Miller v. SEVAMP, Inc.*,
   362 S.E.2d 915 (Va. 1987) ........................................................ 39, 47-48

*Miller v. Washington Workplace, Inc.*,
   298 F. Supp. 2d 364 (E.D. Va. 2004) ...............................................37

*Mitchem v. Counts*,
   523 S.E.2d 246 (Va. 2000) ..............................................................39

*Mizell v. Sara Lee Corp.*,
   Civil Action No. 2:05cv129, 2005 U.S. Dist. LEXIS 36988 (E.D. Va.
   June 9, 2005), *aff'd*, 158 F. App'x 424 (4th Cir. 2005) .....................23

*Morris v. Morris*,
   385 S.E.2d 858 (Va. 1989) ........................................................ 34-35

*Naccash v. Burger*,
   290 S.E.2d 825 (Va. 1982) ..............................................................33

*Nguyen v. CNA Corp.*,
   44 F.3d 234 (4th Cir. 1995) ......................................................47, 48

*Nigro v. Va. Commonwealth Univ. Med. College of Va.*,
   Civ. Action No. 5:09-CV-00064, 2010 U.S. Dist. LEXIS 56229 (W.D.
   Va. June 4, 2010), *aff'd*, 492 F. App'x 347 (4th Cir. 2012) ......... 29-30

*Ortiz v. Panera Bread Co.*,
   No. 1:10CV1424, 2011 U.S. Dist. LEXIS 85463
   (E.D. Va. Aug. 2, 2011) ......................................................25, 28, 38

*Pham v. Bank of N.Y.*,
   856 F. Supp. 2d 804 (E.D. Va. 2012) ...............................................52

*Progress Printing Co., Inc., v. Nichols*,
   421 S.E.2d 428 (Va. 1992) ..............................................................48

*Prospect Dev. Co. v. Bershader*,
   515 S.E.2d 291 (Va. 1999) ..............................................................14

*Pullman Co. v. Jenkins*,
   305 U.S. 534 (1939) .........................................................................56

*Rezulin Prods. Liab. Litig.*, *In re*,
133 F. Supp. 2d 272 (S.D.N.Y. 2001) ..............................................57

*Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*,
507 S.E.2d 344 (Va. 1998) ....................................................... 17-18

*Rowan v. Tractor Supply Co.*,
559 S.E.2d 709 (Va. 2002) ...........................................................40

*Russo v. White*,
400 S.E.2d 160 (Va. 1991) .....................................................*passim*

*School Board of City of Norfolk v. Giannoutsos*,
380 S.E.2d 647 (Va. 1989) ...........................................................46

*Schrembs v. Chick-Fil-A, Inc.*,
Civil Action No. 91-CA-1565-A, 2001 U.S. Dist. LEXIS 26224 (E.D.
Va. Nov. 30, 2001)..........................................................................38

*Silverman v. Town of Blackstone, Va.*,
843 F. Supp. 2d 624 (E.D. Va. 2011) ...........................................44

*Storey v. Patient First Corp.*,
207 F. Supp. 2d 431 (E.D. Va. 2002) ......................................41, 43

*Supervalu, Inc. v. Johnson*,
666 S.E.2d 335 (Va. 2008) ...........................................................19

*Sutter v. First Union Nat'l Bank*,
932 F. Supp. 753 (E.D. Va. 1996) ....................................34, 35, 38

*Teasley v. Montgomery Ward*,
415 S.E.2d 596 (Va. 1992) ...........................................................37

*Town of Vinton v. City of Roanoke*,
80 S.E.2d 608 (Va. 1954) .............................................................48

*Turner v. JP Morgan Chase Bank, N.A.*,
543 F. App'x 300 (4th Cir. 2013)..................................................53

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
133 S. Ct. 2517 (2013)..................................................................40

*Vansant & Gusler, Inc. v. Washington*,
 429 S.E.2d 31 (Va. 1993) .......................................................46

*Virginia Harvestore, Inc. v. Straatmeyer*,
 Civil Action No. 0957-92-4, 1993 WL 44566 (Va. Ct. App. Feb. 23,
 1993) ..........................................................................................35

*Vitol, SA v. Primerose Shipping Co., Ltd.*,
 708 F.3d 527 (4th Cir. 2013) .............................................13, 28

*Walton v. Greenbrier Ford, Inc.*,
 370 F.3d 446 (4th Cir. 2004) ...................................................50

*Weidman v. Jamborsky*,
 347 F.3d 1497 (4th Cir. 1994) ..................................................10

*Witthohn v. Fed. Ins. Co.*,
 164 F. App'x 395 (4th Cir. 2006) .............................................49

*Womack v. Eldridge*,
 210 S.E.2d 145 (Va. 1974) ................................................*passim*

## RULES

Fed. R. App. P. 32.1(b) ....................................................................19

Fed. R. Civ. P. 8 ..............................................................................26

Fed. R. Civ. P. 9(b) ........................................................3, 13, 14, 16

Fed. R. Civ. P. 12(b)(6) ...............................................5, 12, 50

## FEDERAL STATUTES

28 U.S.C. § 1291 ........................................................................1, 61

28 U.S.C. § 1332(a) .................................................................1, 2, 61

28 U.S.C. § 1332(a)(1) .................................................................51

28 U.S.C. § 1441(b) .....................................................................61

<u>**STATE STATUTES**</u>

Va. Code § 8.01-243(a)......................................................................20, 22

Va. Code § 8.01-247.1 ..............................................................................29

Va. Code § 8.01-249(1) .............................................................................20

Va. Code § 40.1-51.2 ...............................................................................45

Va. Code § 40.1-51.2:1 ............................................................................45

Va. Code § 40.1-51.2:2(A) ............................................................45, 46, 47

Va. Code § 40.1-51.2:2(B)........................................................................46

Va. Code. § 54.1-111(A)(8) ......................................................................44

Va. Code § 54.1-3310 .........................................................................41-42

Va. Code § 54.1-3435 .........................................................................41-42

Va. Code. § 65.2-100 *et seq.* ....................................................................34

Va. Code § 65.2-101 ................................................................................34

Va. Code § 65.2-307(A)............................................................................34

# I.    JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Virginia, from which this appeal is taken, had jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Plaintiff Richard C. Weidman's state of citizenship (Virginia) is different from the citizenship of Defendants ExxonMobil, Clarion Ellis Johnson, Jeffrey Woodbury, Victoria Martin Weldon, Stephen D. Jones, Kent Dixon, F. Bud Carr, and Daniel Whitfield.  Although Defendants Jeremy Sampsell, Gerard Monsivaiz, and Meghan Hasson are citizens of Virginia, the Court properly held that their citizenship should be disregarded because they were fraudulently joined in this action.

The United States Court of Appeals for the Fourth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  On August 1, 2013, the District Court entered a final order granting the Defendants' Motion to Dismiss, and dismissing the case in its entirety.  (Appx. at 377-88.)[1]

On August 9, 2013, Weidman timely filed a Notice of Appeal.  (*Id*. at 389.)

---

[1] "Appx." refers to the Joint Appendix filed by Weidman on July 28, 2014.

## II.    <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.    Whether the District Court correctly denied Plaintiff's Motion for Remand on the ground that subject matter jurisdiction existed under 28 U.S.C. § 1332(a) because the allegations against three non-diverse Defendants were so devoid of factual support that their citizenship could be disregarded under the doctrine of fraudulent joinder.

2.    Whether the District Court correctly dismissed the Complaint for failure to state a claim upon which relief can be granted.

### III.   STATEMENT OF THE CASE

**A.   PROCEDURAL HISTORY**

1.    On March 26, 2013, Appellant Richard C. Weidman ("Weidman") filed this *pro se* action in state court against Exxon Mobil Corporation ("ExxonMobil") and ten individual Defendants, all employees of ExxonMobil. The Complaint alleges four counts: (i) fraud; (ii) intentional infliction of emotional distress; (iii) "personal injury"; and (iv) wrongful discharge. (Appx. at 12-25.)

2.    On April 25, 2013, after filing a Plea in Bar and Demurrer in the Fairfax County Circuit Court, Appellees timely removed the case to the U.S. District Court for the Eastern District of Virginia on the grounds of diversity jurisdiction and moved the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Appx. at 31-169.)

3.    To avoid unnecessary duplication, Appellees refer this Court to the list of other pleadings, motions and briefs filed by the parties in the District Court contained in Weidman's Opening Brief of Appellant ("Br. of App.") at 9-11.

4.    In an Order and Memorandum Opinion dated August 1, 2013, the District Court granted Defendants' Motion to Dismiss on the grounds that Weidman failed to state a claim for which relief may be granted.  (Appx. at 377-88.)   The Court's Order and Memorandum Opinion concurrently denied Weidman's Motion for Remand and dismissed the case in its entirety.

5.      On August 9, 2013, Weidman filed a Notice of Appeal.  (*Id*. at 389.)

## B.    **FACTUAL STATEMENT**

The relevant facts on appeal are those contained in the Complaint.  Facts that Weidman now asserts in his appellate brief which are not contained in the Complaint, or that are inconsistent with what he pleaded, should be disregarded. *See Karpel v. Inova Health Sys. Servs*., 134 F.3d 1222, 1227 (4th Cir. 1998).  The following is a summary of the material facts alleged in the Complaint:

1.      ExxonMobil hired Weidman on October 1, 2007, as a Senior Physician.  (Appx. at 12-25, ¶ 1.)  He directed the ExxonMobil medical clinic and staff at the Company's Fairfax, Virginia location.  (*Id*.)

2.      Upon hire, Weidman received ExxonMobil's Standards of Business Conduct, a manual that includes a policy which, among other things, forbids retaliation against employees for reporting violations of company policies.  (*Id*., ¶ 10.)

3.      In 2009, Weidman discovered allegedly illegal pharmacies at ExxonMobil.  (*Id.*, ¶ 7.)  He reported this to ExxonMobil management and also complained about purportedly illegal stockpiling of medication at company clinics (the "first complaint").  (*Id.*, ¶¶ 7-8.)

4.      Defendant Jones (Weidman's second-line supervisor) then allegedly requested that Weidman participate in a "scheme" involving an unnamed

4

pharmacy in which the pharmacy would distribute the stockpiled medications to ExxonMobil employees. (*Id*., ¶ 8) Weidman claims to have refused the request on the grounds that he believed it would be in violation of an unspecified law. (*Id*.)

5. In January 2010, Weidman informed Defendant Johnson (ExxonMobil's Medical Director, to whom Defendant Jones reported) that Weidman was not interested in obtaining a New Jersey medical license to be used at an ExxonMobil medical clinic in Clinton, New Jersey, as long as the New Jersey clinic was operating as an "illegal pharmacy." (*Id*., ¶ 9.) Johnson allegedly became "livid," and thereafter initiated a "malicious campaign of retaliation" against Weidman by humiliating Weidman and falsely characterizing him as a "poor performer." (*Id*., ¶¶ 9, 11-12.)

6. Johnson's retaliatory "campaign" allegedly reached an "outrageous" level on January 14, 2010, when he purportedly implied at an office gathering that Weidman was a pedophile. (*Id*., ¶ 12.)

7. Several days after the January 14, 2010 "events," Weidman reported the alleged retaliation to ExxonMobil's senior management along with his opinion that (i) ExxonMobil was violating pharmacy laws in several states, (ii) Johnson and the Company's medical department were knowingly permitting theses violations, and (iii) Johnson was withholding from corporate headquarters information about a

nurse being discharged for falsifying medical records (his "second complaint"). (*Id.*, ¶ 13.)

8.    Following receipt of Weidman's report of the above concerns, ExxonMobil allegedly conducted a so-called "sham" investigation of Weidman's complaints.    (*Id.*, ¶ 15.)    The ExxonMobil investigation team, Defendants Whitfield and Dixon, allegedly told Weidman they found no evidence that Johnson harassed him.    (*Id.*, ¶ 16.)    They also allegedly stated that ExxonMobil's law department determined that the pharmacies at issue were legal.    (*Id.*)    During this same post-investigation conversation, Weidman claims that the investigators "implied" that he had stolen sensitive documents from ExxonMobil and that he should resign.    (*Id.*)

9.    On an unspecified date, ExxonMobil's medical department allegedly characterized Weidman as a "poor performer" and required him to participate in a "Performance Improvement Plan[.]"    (*Id.*, ¶ 17.)    Weidman claims this action was further retaliation for his "complaints to senior management[.]"    (*Id.*)

10.    In September 2011, Weidman received a forwarded e-mail from ExxonMobil's law department that was allegedly sent to the Company's U.S. Medical Department managers expressing the view that ExxonMobil's pharmacies in certain states "would have constituted a violation of the laws of those jurisdictions," as Weidman previously reported.    (*Id.*, ¶¶ 18-19.)

11.    On an unspecified date thereafter, Weidman allegedly sent an e-mail to senior management of ExxonMobil (his "third complaint") complaining yet again that Johnson and unspecified members of the Medical Department had retaliated against him for his earlier complaints about the pharmacy operations. Weidman also alleged a "cover up" of this and other conduct contained in his prior complaint.  (*Id*., ¶ 19.)

12.    After receiving Weidman's e-mail, ExxonMobil initiated a second investigation, conducted by Defendants Jeremy Sampsell and F. Bud Carr.  (*Id*., ¶ 20.)  During the investigation, Defendant Carr allegedly admitted to Weidman that ExxonMobil had been operating illegal pharmacies and Johnson had allowed them to operate.  (*Id*.)  Carr also allegedly told Weidman that Weidman was a "poor performer" and ExxonMobil had developed a "plan" to deal with Weidman and his complaints.  (*Id*.)  The other investigator, Defendant Sampsell, is not alleged to have said or done anything to Weidman.  (*Id*.)

13.    Weidman alleges the "Performance Improvement Plan" was created to force him to resign, or alternatively, to generate a false record of poor performance to justify dismissal.  (*Id.*, ¶ 21.)  Defendant Weldon conducted the meetings associated with the "Performance Improvement Plan," and those meetings were attended by Defendant Hasson.  (*Id.*)  The meetings allegedly did not mention

performance improvement, but only resulted in new tasks for Weidman that allegedly had no purpose but to overburden him and cause him to fail. (*Id.*)

14.    In late October 2012, Weidman allegedly complained to a Human Resources representative about the "oppressive and unjustifiable" meetings with Weldon. (*Id.*, ¶ 22.) He claims to have been particularly concerned about a meeting scheduled for October 24, 2012, a few days before he was to undergo surgery. (*Id.*)

15.    Weldon supposedly refused Weidman's request to reschedule that meeting and was "hostile and confrontational" during the meeting. (*Id.*) While at the October 24, 2012 meeting, Weidman alleges that he suffered a heart attack as a "direct result" of the stress that Defendant Weldon had "maliciously inflicted" on him there.[1] (*Id.*)

16.    At another meeting in mid-December 2012, Weldon told Weidman that the Performance Improvement Plan would extend beyond its scheduled end date of December 31, 2012. (*Id.*, ¶ 23.) Weidman objected to the extension,

---

[1] In his Opening Brief, however, Weidman attempts to substantially revise this chain of causation by alleging, instead, that he actually started suffering the heart attack before he even arrived at work for the October 24, 2012 meeting (Br. of App. at 20-21). He also now theorizes that his heart attack was supposedly caused, not by Weldon's "hostile and confrontational" conduct at the meeting, as alleged in the Complaint, but by the cumulative workplace stress to which he claims to have been subjected at ExxonMobil over the previous several years. (*Id.* at 34-35.)

claiming that he had discovered and reported the so-called "illegal" pharmacy operations that Weldon had allegedly overseen.  (*Id.*)

17.     On January 22, 2013, Defendant Jones told Weidman that his employment was being terminated for "not cooperating with the Performance Improvement Plan."  (*Id.*, ¶ 24.)

18.     Although Weidman contends his discharge was in retaliation for reporting alleged "violations of the law and Exxon Mobil ethics policies" (*Id.*, ¶ 35), his discharge occurred more than three years after he first reported concerns in 2009.  (*Id.*, ¶¶ 7-8.)

## IV.   SUMMARY OF THE ARGUMENT

Weidman worked for ExxonMobil as a Senior Physician in Fairfax, Virginia from October 2007 until January 2013, when his employment ended due to performance deficiencies.  He has now sued ExxonMobil for alleged workplace events that took place at various times over his five years with the company.

In addition to suing his former employer, Weidman also sued just about everyone else in his chain-of-command, including his manager (Defendant Weldon), Weldon's manager (Defendant Jones), Jones's manager (Defendant Johnson), and the top-line supervisor in his department (Defendant Woodbury).  He also sued four ExxonMobil human resources professionals (Defendants Hasson, Sampsell, Whitfield and Monsivaiz, the latter of whom is mentioned only

9

in the caption of the Complaint), along with two investigators who investigated his various workplace complaints over the years (Defendants Dixon and Carr).

While courts typically afford leniency to *pro se* plaintiffs, no such indulgence is due here. Weidman is an experienced litigant, having actively litigated more than 25 *pro se* lawsuits in Virginia state and federal courts since the late 1980s. (Appx. 195-285.) Indeed, Weidman appeared before this Court on two prior occasions, one of which was a civil rights action against the then-Chief Judge of the Fairfax County Circuit Court, The Honorable Richard J. Jamborsky. *See Weidman v. Jamborsky*, 347 F.3d 1497 (4th Cir. 1994).

Weidman's lawsuit is really one of "retaliatory discharge" – that he was allegedly fired because of his various internal complaints. Weidman's theory is facially implausible, as he remained an ExxonMobil employee for years after lodging his first internal complaint. Moreover, Virginia law does not recognize a claim for "retaliatory discharge." Perhaps realizing this fatal flaw, Weidman, has tried to recast his garden-variety employment dispute into a hodge-podge of tort claims – fraud, intentional infliction of emotional distress, "personal injury" and "wrongful discharge." Despite this artful pleading, Weidman failed to state a valid legal claim against any of the Defendants, and the District Court properly dismissed his Complaint.

Weidman's fraud claim, which is based upon his alleged reliance on an ExxonMobil anti-retaliation policy, fails for several reasons. <u>First</u>, the facts supporting the fraud claim are not pleaded with the specificity required under Fed. R. Civ. P. 9(b). In particular, the Complaint is bereft of facts establishing that any of the ten individual Defendants (and in particular the three non-diverse Defendants) can be held personally liable for a claimed misrepresentation in their *employer's* policy documents. <u>Second</u>, under Virginia's "source of duty" doctrine, no fraud or other tort claim can exist here because the anti-retaliation policy is alleged to be part of a "unilateral contract" of employment (which ExxonMobil disputes). <u>Third</u>, the anti-retaliation policy at issue does not constitute a representation of present material fact, but, instead, only statements about future events that cannot support a fraud claim. <u>Fourth</u>, the claim is time-barred because Weidman filed suit more than two years after claiming to have suffered retaliation for his initial complaints. Moreover, after asserting that the anti-retaliation policy was being ignored, Weidman's further reliance upon it would have been objectively unreasonable as a matter of law. Accordingly, his fraud claim fails.

The intentional infliction of emotional distress ("Intentional Infliction") claim likewise fails because the alleged conduct at issue is not "outrageous and intolerable" as defined by controlling Virginia precedent – a threshold question of law for the Court to decide. Weidman's new argument, that he was not required to

allege "outrageous and intolerable" conduct, cannot be considered because it was never raised in the District Court. In any event, it fails as it is legally incorrect for the reasons explained below.

Additionally, both the Intentional Infliction and "personal injury" claims arising out of the October 2012 employment meeting (in which he claims to have suffered a heart attack) are barred by the Virginia Workers' Compensation Act, which provides the exclusive remedy for workplace injuries of the sort he alleges.

Lastly, the wrongful discharge claim fails because Weidman did not plead, nor can he identify, any Virginia statute with a qualifying public policy that was violated by his discharge. Weidman's allegations also fail to rebut the ironclad presumption under Virginia law that he was an "at-will" employee who could be discharged at any time and for any reason without consequence. Indeed, he signed multiple documents acknowledging this. As Weidman failed to state a valid claim against any of the Defendants, the District Court properly dismissed the Complaint.

The District Court also correctly held that removal of the case to federal court was proper under the doctrine of fraudulent joinder, as the allegations against the three non-diverse Defendants (Monsivaiz, Sampsell, and Hasson) were so devoid of factual support that there was no possibility of any viable claim against them. Weidman has offered no valid reasons for disturbing the District Court's decision.

12

# V.    <u>ARGUMENT</u>

Weidman appeals the District Court's decision to (i) grant Appellees' Motion to Dismiss and (ii) deny his Motion to Remand.  Defendants will address both of these issues, in turn.[2]

## A.    <u>STANDARD OF REVIEW</u>

This Court reviews the grant of a motion to dismiss for failure to state a claim *de novo*.  *Vitol, SA v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013).  To survive dismissal, Weidman's "'[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] [his] claims across the line from conceivable to plausible.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  His Complaint "must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id*.  "[U]nadorned conclusory allegations . . .'are not entitled to the assumption of truth.'"  *Id*. (citation omitted).

The District Court properly dismissed Weidman's Complaint because it failed to meet the *Twombly* standards.  Indeed, as to most of the Defendants – particularly the three Virginia-based Defendants found to have been fraudulently joined – the Complaint contained virtually no factual allegations of anything

---

[2] The fraudulent joinder argument requires an analysis of the legal requirements for Weidman's claims.  Therefore, the Rule 12(b)(6) dismissal arguments are addressed first to avoid repeating the same analysis in the fraudulent joinder discussion in Section V(G) *infra*.

13

specific to them, but only insufficient, unadorned legal conclusions about the "Defendants" collectively.

**B.    WEIDMAN FAILS TO STATE A CLAIM FOR FRAUD**

The District Court dismissed Weidman's fraud claim for two independent reasons: (i) Weidman failed to plead the requisite particularity for a fraud claim and (ii) the claim is barred by the statute of limitations.  (Appx. at 383-85.)

The District Court's ruling should be affirmed for the two reasons stated in the opinion, as well as several additional reasons argued below – each of which serve as an independent basis for dismissal of the fraud claim.

**1.    Weidman failed to allege the elements of fraud with particularity**

To establish a fraud claim in Virginia, a plaintiff must show: (1) a false representation; (2) of material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reasonable reliance by the party misled; and (6) resulting damage to the misled party.  *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999).  Additionally, a party "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In other words, Weidman was required to allege with particularity, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks and citation

omitted);  *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (Posner, J.) (finding that the necessary details include the "who, what, where, and when of the alleged fraud[.]").  Weidman failed to meet this standard.

### a.  No specific allegations against the ten individual Defendants

First, the Complaint lacks specific allegations implicating any of the ten individual Defendants in fraud.  (Appx. at 55, ¶¶ 25-29.)   In fact, no individual Defendant is even named in the fraud count.  (*Id*.)

Instead, Weidman vaguely alleges that unspecified "members of the Human Resources and Law Departments of Exxon Mobil falsely represented to Weidman that there would be no retaliation against him for reporting violations of the law and ethics policies of Exxon Mobil."  (*Id*. at 22, ¶ 25.)  That is it.  There is: (i) no "who, what, where, and when" of any purported fraud; (ii) no details of any fraudulent representations of non-retaliation by any individual Defendants; and (iii) no allegation of how Weidman may have reasonably relied to his detriment upon any purported misrepresentation by any individual Defendant.

Such conclusory allegations against the ten individual Defendants are clearly insufficient under Rule 9(b).  *See, e.g.*, *Jones v. Shooshan*, 855 F. Supp. 2d 594, 603-04 (E.D. Va. 2012) (fraud claims dismissed where "plaintiff [made] only vague and conclusory allegations that any of the other defendants fraudulently concealed material facts, totally failing to specify statements or conduct to support

15

his claim"). To be sure, "guilt by association" allegations do not meet the strict pleading requirements of Rule 9(b). *Id.* at 604 (internal quotation marks and citation omitted). Accordingly, Weidman's fraud claims against the individual Defendants are insufficient and the District Court properly dismissed them.

### b.    Allegations against ExxonMobil are also bare

The fraud allegations against ExxonMobil also lack the requisite particularity. Weidman, instead, alleges – in the passive voice – that he was "presented with" the Standards of Business Conduct around the time of his hire in 2007, that the Standards of Business Conduct were previously adopted by the company's Chief Executive Officer and Board of Directors, and that the contents of the Standards of Business Conduct were reviewed during "annual 'Business Practice Review' meetings[.]" (Appx. at 15, ¶ 10.) Weidman provides no further details regarding the "who, what, where, and when" of the alleged fraud. His vague allegations are insufficient to state a fraud claim against ExxonMobil.

In his brief, Weidman contends that the District Court failed to address the so-called "second fraudulent misrepresentation" – *i.e.*, the alleged statements by ExxonMobil investigators who investigated his complaints. (Br. of App. at 51-52.) Weidman's fraud claim as pleaded, however, was premised <u>solely</u> upon the allegedly false non-retaliation policy contained in the Standards of Business Conduct – not anything that any of the four investigators allegedly said or did.

16

(Appx. at 22, ¶¶ 25-29.)   Moreover, even if properly pleaded, nothing that the investigators allegedly said would support a fraud claim against any of the Defendants – and certainly not against any of the investigators individually.   At most, Weidman vaguely alleged that three of the investigators, Whitfield, Dixon and Carr, lied to him about certain facts found in the investigations.   (*Id*. at 17-19, ¶¶ 16, 20.)   Nowhere does Weidman allege any facts detailing how he reasonably relied to his detriment upon such purported untruths.   Weidman also made no specific allegations about one of the investigators, Defendant Sampsell, other than that he participated in an unspecified manner in the second investigation.   (*Id*. at 19, ¶ 20.)   Thus, even if Weidman had actually pleaded this "second" fraud claim, dismissal would still be proper.

In sum, Weidman failed to plead his fraud claim with sufficient particularity against ExxonMobil or the individual Defendants as required by Fed. R. Civ. P. 9(b).   The District Court correctly dismissed this claim against all Defendants.

**2.     Because Weidman claims the anti-retaliation policy is part of an employment contract, the source of duty/economic loss doctrine bars any fraud claim arising from it**

Although not addressed by the District Court, Appellees also correctly argued below that Weidman's fraud claim is barred by the Virginia doctrine that: "[To] safeguard against turning every breach of contract into an actionable claim for fraud[,]" a fraud claim must arise from "a common law duty, not one existing

17

between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347-48 (Va. 1998) (citation omitted). This "source of duty" principle is sometimes referred to as part of the "economic loss rule." *See, e.g.*, *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004).

In *Richmond Metropolitan Authority*, the defendant, a construction contractor, allegedly misrepresented that all of its work had been performed in accordance with the applicable contract specifications to induce the plaintiff to pay for the work. 507 S.E.2d at 346. Because the duty to make such representations was part of the construction *contract* at issue, the court held such "actions do not give rise to a cause of action for actual fraud, albeit [Defendant] misrepresented its compliance with the design criteria." *Id.* at 347. This same problem is fatal to Weidman's fraud claim.

He asserts the allegedly false anti-retaliation policy was part of an purported "unilateral contract between Exxon Mobil and employees of Exxon Mobil[.]" (Appx. at 23, ¶ 34.) While Appellees dispute that any such policy is sufficient to overcome the strong presumption of at-will employment, Weidman is bound by his own assertion. Just as in *Richmond Metropolitan Authority*, the duty alleged here (*i.e.*, the anti-retaliation policy) is one that does not arise from the common law, and could only exist, if at all, by contract, as Weidman asserts. Accordingly, by his

18

own allegations, Weidman's fraud claim necessarily fails under the source of duty/economic loss doctrine.

### 3.    No misrepresentation of a material fact

Weidman's fraud claim is likewise doomed by the principle that: "Because fraud must involve a misrepresentation of a present or pre-existing fact, fraud ordinarily cannot be predicated on unfulfilled promises or statements regarding future events." *Supervalu, Inc. v. Johnson,* 666 S.E.2d 335, 342 (Va. 2008) (citations omitted).

The anti-retaliation policy that Weidman claims to be fraudulent is not a representation of present, existing material fact. Rather, as pleaded, the policy is nothing more than a statement regarding future events, namely "that no retaliation *will be* taken [in the future or at some later time] against any employee because he/she reports violations of the *Standards*." (Appx. at 15, ¶ 10 (emphasis added).) Accordingly, there can be no actionable misrepresentation of a present or pre-existing material fact. *See Johnson,* 666 S.E.2d at 342 (dismissing fraud claim that was based solely on defendants' promises of assistance in the future).

### 4.    The fraud claim is barred by the statute of limitations and lack of reasonable reliance

The District Court also properly held that Weidman's fraud claim was barred by the applicable two-year statute of limitations. The Complaint also admits facts

that negate any basis for reasonable reliance upon any purported misrepresentation in the anti-retaliation policy.

Va. Code § 8.01-243(a) provides that "every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." The limitations period begins running when the fraud "is discovered *or by the exercise of due diligence reasonably should have been discovered*[.]" Va. Code § 8.01-249(1) (emphasis added). In a procedurally similar case, the District Court dismissed a fraud claim because the plaintiff had alleged facts from which "[a] reasonable person in [her] situation should have surmised" more than two years before filing suit that the alleged misrepresentations were untrue. *Barksdale v. Nationwide Mut. Ins. Co.*, No. 4:06CV00043, 2007 U.S. Dist. LEXIS 4641, at *6 (W.D. Va. Jan. 23, 2007).[3] Weidman's Complaint suffers from the same defect.

Weidman's fraud claim is comprised of three components: (1) his complaints "[b]eginning in 2009" regarding allegedly illegal practices by ExxonMobil, (Appx. at 14-15, ¶¶ 7-8); (2) his alleged reliance upon the anti-retaliation policy in January 2010, when he made another complaint asserting that, Johnson, the head of ExxonMobil's Medical Department, allegedly begun a "malicious campaign of retaliation" that had already reached an "outrageous

---

[3] Pursuant to Fed. R. App. P. 32.1(b), copies of all unpublished decisions that are not available in publically accessible electronic databases are provided in alphabetical order at Exhibit A.

20

level," (*id*. at 16-17, ¶¶ 11-14); and (3) his continued reliance upon the policy in September 2011, when he made his third complaint related to the alleged fraud. (*Id*. at 18, ¶¶ 18-19.)[4]

Weidman's allegations establish that the first and second components of his fraud claim (relating to the 2009 and 2010 complaints) are time-barred because he admits that, well over two years before he filed this action in March 2013, he was aware of facts that would have caused a reasonable person in his situation to surmise that ExxonMobil was not following the anti-retaliation policy.[5]

Specifically, Weidman alleges that, by early 2010, Defendant Johnson was already subjecting him to "malicious" and "outrageous" retaliation in direct violation of the anti-retaliation policy. (*Id*. at 16, ¶¶ 11-12.) Indeed, only days later, Weidman claims to have reported this claimed retaliation to ExxonMobil's senior management, which allegedly did nothing but conduct a "sham" investigation. (*Id*. at 16-18, ¶¶ 13-16.)

Thus, Weidman's own allegations admit that he claimed to have been subjected to, and complained of, intense retaliatory treatment by a high-ranking

---

[4] A timeline of Weidman's allegations, including his complaints and ExxonMobil's investigations, is located in the Joint Appendix. (*Id*. at 369.)

[5] Appellees deny that Weidman was subjected to any retaliatory action, but for the purposes of evaluating Weidman's claims, his factual allegations are accepted as true.

ExxonMobil executive – in violation of the anti-retaliation policy – more than two years before filing suit in 2013.  Accordingly, those fraud claims are barred by the applicable two-year statute of limitations, since any purported misrepresentation in the policy "reasonably should have been discovered" by Weidman more than two years prior to commencing the action below.  *See* Va. Code § 8.01-243(a); *Barksdale*, 2007 U.S. Dist. LEXIS 4641, at *6.  Accordingly, Weidman's fraud claims relating to his first complaint in 2009 and second complaint in January 2010 are absolutely time barred.[6]

The last part of Weidman's fraud claim – the third complaint, lodged in September 2011 (Appx. at 18, ¶ 19) –  likewise fails.  By that time, Weidman admits he believed the anti-retaliation policy was not true.  Thus, his reliance upon the policy was unreasonable as a matter of law.  *See, e.g.*, *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 194-95 (Va. 1993) (sustaining demurrer to fraud claim where complaint admitted facts indicating that the alleged misrepresentation was likely not true; "it is unreasonable to rely on the representations of [an] allegedly dishonest party").  Indeed, prior to making his third internal complaint in September 2011, Weidman now admits "[i]t was obvious to [him] after receiving the [September 2011] email [from the ExxonMobil

---

[6] Weidman's renewed complaint in September 2011 does not restart the statute of limitations on his fraud claims because the alleged "fraud" had already been discovered, or should have been discovered, no later than January 2010.

Law Department] that the results of the first investigation were not just mistakes, but that Plaintiff had been lied to by the investigators." (Br. of App. at 14.) Accordingly, based upon Weidman's admitted awareness of these alleged facts and circumstances at the time he lodged his third complaint, it was not objectively reasonable for him to have relied upon the anti-retaliation policy. *Metrocall*, 437 S.E.2d at 194-95.[7]

Weidman contends it was improper for the District Court to make assumptions as to his state of mind at the time of the allegedly fraudulent representations. (Br. of App. at 26-28.) But, as demonstrated above, the District Court did not make any assumptions. Rather, it relied upon Weidman's own admissions about what he claims to have known, and when he knew it. As Weidman failed to state a claim for fraud, the District Court properly dismissed his claim.

---

[7] Moreover, as explained *infra* in connection with Count IV, Weidman is presumed to be an at-will employee subject to discharge at any time for any reason, and he acknowledged his at-will employment status in three separate employment documents that he signed. Therefore, Weidman could not have reasonably relied upon the anti-retaliation policy as a shield from discharge. *See, e.g.*, *Mizell v. Sara Lee Corp.*, Civ. A. No. 2:05cv129, 2005 U.S. Dist. LEXIS 36988, at *21-22 (E.D. Va. June 9, 2005), *aff'd*, 158 F. App'x 424 (4th Cir. 2005) (dismissing plaintiff's fraud claim because her reliance on procedural guarantees in employee handbook was "not objectively reasonable" given employee's at-will employment).

**C.    THE DISTRICT COURT PROPERLY DISMISSED WEIDMAN'S CLAIM FOR "INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS"**

The District Court also properly dismissed Weidman's Intentional Infliction claim in Count II.  (Appx. at 383-85.)  That claim is supported by little other than unadorned labels and legal conclusions that do not pass muster after *Twombly*. Indeed, as to the individual Defendants – and the three non-diverse Defendants in particular – Weidman presented no allegations that they engaged in any conduct that possibly could support an Intentional Infliction claim.

### 1.    The Complaint fails to state an Intentional Infliction claim

The tort of intentional infliction of emotional distress is "not favored in the law," and is saddled with very strict standards and limitations.  *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (internal quotation marks and citation omitted). Specifically, a plaintiff must allege facts that establish by clear and convincing evidence: (1) the wrongdoer's conduct was "intentional or reckless"; (2) the conduct was "outrageous and intolerable"; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the resulting distress was severe.  *Id*. (citing *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)).  The second element, "outrageous and intolerable" conduct, is particularly difficult to establish, as "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

24

in a civilized community." *Id*. at 162. These demanding requirements are "aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Womack*, 210 S.E.2d at 148.

Additionally, not the trier of fact, but "the trial court must initially determine whether the facts alleged will support a finding of both outrageousness and severe emotional distress." *Russo*, 400 S.E.2d at 162; *see also Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir. 1987) ("[w]hether conduct is sufficiently outrageous is, in the first instance, a question of law for the court").

Moreover, "courts applying Virginia law have regularly recognized that it is especially difficult to establish IIED in the employment context" like Weidman's claim here. *See, e.g.*, *Ainsworth v. Loudoun Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 982 (E.D. Va. 2012); *Ortiz v. Panera Bread Co.*, Civ. A. No. 1:10CV1424, 2011 U.S. Dist. LEXIS 85463, at *17 (E.D. Va. Aug. 2, 2011) (same). Weidman failed to clear this especially difficult hurdle.

First, Weidman's Complaint fails to allege that the majority of the individual Defendants – Woodbury, Jones, Carr, Whitfield, Sampsell, Monsivaiz and Hasson – did much of anything to Weidman, let alone something "outrageous and intolerable." His attempt to rope them in merely by affixing legal conclusions to

25

the unspecified, collective "conduct of the Defendants" (Appx. at 23, ¶ 30) is exactly the type of formulaic, conclusory pleading that *Twombly* condemns.[8]

The only arguably non-conclusory allegations involve only Defendants Johnson, Dixon, and Weldon, and their employer, ExxonMobil – none of the three non-diverse Defendants. Yet, those allegations still come nowhere close to the required level of "outrageous and intolerable" conduct. For example, Weidman alleges that: (1) sometime after January 2010, Defendant Johnson, in unspecified ways, "humiliated Weidman before [his] colleagues, reports, and patients, and falsely classified" him as a "poor performer" (*id*. at 16, ¶ 11); (2) on January 14, 2010, Johnson "implied that Weidman was a pedophile" at an office gathering (*id*., ¶ 12); (3) sometime after Weidman complained about Johnson's "harassing behavior" (*id*. at 17, ¶ 14), Defendant Dixon, who investigated that complaint, relied upon statements from Johnson to "imply that Weidman had stolen sensitive documents from Exxon Mobil" (*id.* at 17-18, ¶ 16); (4) ExxonMobil forced Weidman to participate in a Performance Improvement Plan that he disagreed with and found to be stressful, allegedly in retaliation for Weidman's January 2010

---

[8] This Court previously held that Intentional Infliction claims asserted in federal court should be evaluated under the pleading standards of Fed. R. Civ. P. 8, and not the somewhat more demanding standards under Virginia law. *See Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005). The Rule 8 pleading requirements, however, were elevated substantially with the Supreme Court's subsequent decision in *Twombly*.

26

complaint to senior management (*id.* at 18, ¶ 17);   (5) as part of a "malicious 'plan'" to force Weidman out of ExxonMobil, Defendant Weldon required Weidman to attend an "inordinate number of meetings" as part of the Performance Improvement Plan, in which Weldon sought to "harass," "humiliate," and "attack" Weidman in unspecified ways (*id*. at 19-20, ¶¶ 20-21); and (6) during an October 24, 2012 meeting scheduled a few days before Weidman was to undergo a medical procedure, Weldon was somehow "hostile and confrontational[,]" and "[d]uring the meeting, Weidman suffered a heart attack as a direct result of the stress which Weldon maliciously inflicted upon him." (*Id*. at 20-21, ¶ 22.)[9]

None of these allegations rises to the extreme level of "outrageous and intolerable" conduct under Virginia law.  They are certainly no worse than the more specific allegations deemed insufficient as a matter of law in *Harris v. Kreutzer*, 624 S.E.2d 24, 27 & n.5, 33-34 (Va. 2006).  In that case, the complaint alleged that the defendant, a physician who evaluated the plaintiff's injuries from an auto accident, had "verbally abused [her], raised his voice to her, caused her to break down into tears . . ., stated she was 'putting on a show,' and accused her of being a faker and malingerer," while aware that the plaintiff suffered from post-traumatic stress disorder and was suicidal.  *Id*. at 27 n.5, 33-34.  The Virginia

---

[9] As previously noted, in this appeal, Weidman now asserts that his heart attack was not caused by Weldon's actions at this meeting, but actually started before Weidman came to work, while he was still at home.  (Br. of App. at 20-21.)

27

Supreme Court held that the trial court properly dismissed the Intentional Infliction claim on the pleadings because the plaintiff's allegations were not sufficiently outrageous and intolerable. *Id*. at 33-34. Rather, such "[i]nsensitive and demeaning conduct does not equate to outrageous behavior as set by our caselaw." *Id*.

At best, Weidman's allegations describe only similar insensitive or demeaning interactions. Their infirmity is even more apparent when stripped of the rhetorical labels and formulaic legal conclusions of "outrageous," "malicious," and "intentional" conduct which are no longer "entitled to the assumption of truth" on a motion to dismiss after *Twombly* and its progeny. *Vitol, SA.*, 708 F.3d at 543 (citation omitted).

And because Weidman's Intentional Infliction claim arises in the workplace setting, his allegations should be viewed all the more skeptically. Again, such claims in the employment context are "especially difficult to establish." *Ainsworth*, 851 F. Supp. 2d at 982; *see also Ortiz*, 2011 U.S. Dist. LEXIS 85463, at *17 (same). The plaintiff in *Ainsworth* alleged that certain individual defendants "branded her a 'problem' employee with 'issues,' criticized her work performance, and otherwise treated her negatively." 851 F. Supp. 2d at 982. As a matter of law, however, such allegations did not constitute "outrageous and intolerable" conduct and the court dismissed plaintiff's Intentional Infliction claim for that reason. *Id*.

28

Weidman's similar workplace grievances – that he was classified as a poor performer, required to participate in an allegedly unwarranted Performance Improvement Plan, subjected to stressful meetings and so-called "sham" investigations of his internal complaints – are likewise insufficient to constitute the extreme "outrageous and intolerable" conduct necessary to state a claim.

Weidman's vague allegations that Defendants Johnson and Dixon, respectively, "implied" he was a pedophile and a thief are insufficient as a matter of law to establish "outrageous and intolerable conduct." Weidman's characterization of this conduct as "defamatory"[10] is irrelevant, as it is "insufficient for a defendant to have acted with an intent which is tortious or even criminal." *Russo*, 400 S.E.2d at 162 (internal quotation marks and citation omitted); *see also Johnson v. PSI Pizza, Inc.*, No. 3:11-1698, 2012 U.S. Dist. LEXIS 136826, at *17 (M.D. Pa. Sept. 25, 2012) (holding that "comments suggesting that the plaintiff was a criminal pedophile [did not rise] to the level of outrageous conduct"). Also, "[t]he mere accusation of a crime . . . fails to demonstrate outrageous conduct." *Nigro v. Va. Commonwealth Univ. Med. Coll. of Va.*, Civ. A. No. 5:09-CV-00064, 2010 U.S. Dist. LEXIS 56229, at *44 (W.D. Va. June 4, 2010), *aff'd,* 492 F. App'x

---

[10] Although Weidman did not assert a defamation claim, if he had, it would have been barred by the applicable one-year statute of limitations. *See* Va. Code § 8.01-247.1.

347 (4th Cir. 2012). Put simply, Weidman failed to state a claim for Intentional Infliction and dismissal was proper.

### 2. Weidman's new argument in "Issue 5" was not raised below and, therefore, cannot be considered on appeal

Weidman's Brief does not challenge the District Court's dismissal of Count II on the ground that he argued in the court below – that Defendants' alleged conduct was sufficiently "outrageous and intolerable." (Appx. at 315-16.) Instead, he relies upon a brand new argument (supporting his "Issue 5") that he never raised in any of his multiple briefs or submissions below (*e.g.*, Appx. at 172, 186, 304, 330, 370). Weidman now claims that, because of his alleged physical injury (his claimed heart attack) in addition to emotional distress, he was not required to plead facts establishing the aggravated level of "outrageous and intolerable" conduct required by *Womack* and *Russo*. (Br. of App. at 24.) This last-ditch effort fails because this Court has "repeatedly held that issues raised for the first time on appeal generally will not be considered." *Karpel*, 134 F.3d at 1227 (citation omitted). Accordingly, Weidman's newly-minted argument should be disregarded.

### 3. Even if considered by this Court, Weidman's new argument is incorrect

But even if the Court did allow Weidman's new contention, it would still be without merit. His new argument is based solely on language from *Womack* in which the court is paraphrasing its earlier decision in a *negligent* infliction of

emotional distress case, *Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973). *See Womack*, 210 S.E.2d at 147. In *Hughes*, the court held that, in a negligent infliction of emotional distress context, the offending conduct must involve clear and convincing evidence of a sudden "fright or shock," and of an "unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury." *Hughes*, 197 S.E.2d at 219.

Weidman did not allege a negligent infliction of emotional distress claim. Rather, Count II is expressly framed as a claim for "Intentional Infliction of Severe Emotional Distress." (Appx. at 23). Thus, the negligent infliction of emotional distress standard set forth in *Hughes*, and repeated in *Womack*, does not apply to this case.

Yet, even if Weidman had sued for negligent infliction of emotional distress, such a claim would fail for two reasons. First, the Complaint does not allege that his claimed emotional distress or heart attack resulted from a "shock or fright" – a necessary element of any such claim. *Hughes*, 197 S.E.2d at 219. Indeed, Weidman's new assertions in his Opening Brief expressly disavow any such thing: "In the present case there is no allegation or implication of 'obvious sudden shock or fright[.]'" (Br. of App. at 43.)

Second, Weidman now tries to claim that "the onset of the heart attack was at home before coming to work" as a result of the various workplace-related

"episodes of ongoing emotional trauma" he claims to have encountered over his several years at ExxonMobil.  (*Id*. at 19).  If the Court considers this post-hoc factual reinvention, then it would negate the required, "unbroken chain of causal connection" (*Hughes*, 197 S.E.2d at 219) between the claimed heart attack and the alleged conduct of any particular Defendant.  In fact, by now claiming his heart attack resulted not from one particular action by any specific Defendant, but, instead, from the cumulative effects of various separate workplace interactions with different individual Defendants over several years, Weidman cannot even satisfy the far less demanding normal tort causation standard under Virginia law. *See Ford Motor Co. v. Boomer*, 736 S.E.2d 724, 728, 731-32 (Va. 2013) (affirming that, where multiple actions by different defendants have allegedly caused tortious injury, any particular defendant can be liable only if his or her conduct was alone sufficient to have caused the claimed injury.)

In any event, the Virginia Supreme Court has explained several times that, under *Womack*, "outrageous and intolerable" conduct is, in fact, a required element for claims like Count II here, which seek emotional distress damages allegedly resulting from "non-tactile" torts (*i.e.*, no physical contact or impact between plaintiff and defendant) that do not involve shock or fright.  *See, e.g.*, *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751, 753 (Va. 1988) (citing *Womack* for the proposition that "emotional distress resulting from non-tactile tort

32

may be compensated provided tort is intentional or reckless, conduct is outrageous and intolerable, alleged wrongful conduct and emotional distress are causally connected, and distress is severe"); *Naccash v. Burger*, 290 S.E.2d 825, 830 (Va. 1982) (same); *Russo*, 400 S.E.2d at 162 (same); *McDermott v. Reynolds*, 530 S.E.2d 902, 903 (Va. 2000) (same).

In sum, Weidman's prior and newly asserted allegations of Intentional Infliction fail to articulate a valid basis for overturning the District Court's dismissal of Count II.

## D. WEIDMAN'S COMPLAINT FAILS TO STATE A CLAIM FOR "PERSONAL INJURY"

It is unclear exactly what tort Weidman has attempted to plead in Count III, cryptically labeled as "personal injury." It consists of only a single paragraph, containing nothing but vague labels and conclusions: "Due to the intentional and malicious acts of the Defendants towards the Plaintiff that the Defendants knew, or should have known, would have injured the Plaintiff, the Plaintiff suffered irreparable damage to his heart." (Appx. at 23, ¶ 33.) Again, such conclusory allegations are insufficient to state a claim under *Twombly*.

In any event, as the Defendants argue below, the "personal injury" claim in Count III is duplicative of the Intentional Infliction claim in Count II. (Appx. at 114.) In the District Court, and in his Opening Brief in this Court, Weidman did not contend otherwise. Since the Intentional Infliction claim is infirm as a matter

of law, the "personal injury" claim should fare no better.  And, to the extent Count III can be read as attempting to state a "negligent infliction of emotional distress" claim,[11] such a claim fails for the reasons addressed in the previous section.  (*See supra*, § V(C)(3).)

## E.    WEIDMAN'S INJURY CLAIMS IN COUNTS II AND III ARE BARRED BY VIRGINIA'S WORKERS' COMPENSATION ACT

The District Court also properly found that Counts II and III are barred by the exclusive remedy afforded by the Virginia Workers' Compensation Act ("VWCA") (Va. Code. §§ 65.2-100 through 65.2-1310.)

The VWCA provides the exclusive remedy for employees who suffer: (1) an "injury by accident" that (2) arises "out of an in the course of the employment." Va. Code §§ 65.2-101, -307(A); *Combs v. Virginia Elec. & Power Co.*, 525 S.E.2d 278, 281 (Va. 2000); *Sutter v. First Union Nat'l Bank of Va.*, 932 F. Supp. 753, 758 (E.D. Va. 1996).  If an injury is covered by the VWCA, "jurisdiction is vested solely in the Industrial Commission of Virginia [now the Virginia Workers' Compensation Commission]."  *Sutter*, 932 F. Supp. at 758.

An "injury by accident" subject to the VWCA is one that is caused by an "identifiable incident or sudden precipitating event . . . that . . . resulted in an

---

[11] Weidman alleges that the "Defendants knew, *or should have known*, [their conduct] would have injured the Plaintiff[.]"  (Appx. at 23, ¶ 33) (emphasis added).

34

obvious sudden mechanical or structural change in the body." *Morris v. Morris*, 385 S.E.2d 858, 865 (Va. 1989).

The second requirement, that the injury arises out of the course of employment, is satisfied where "the injury can be fairly traced to the employment as at least a contributing cause." *McGreevy v. Racal-Dana Instruments, Inc.*, 690 F. Supp. 468, 469 (E.D. Va. 1988) (citing *Conner v. Bragg*, 123 S.E.2d 393, 396–97 (Va. 1962)). The "words 'arising out of and in the course of employment' should be liberally construed to carry out the humane and beneficent purpose of the Workmen's Compensation Act." *See Sutter,* 932 F. Supp. at 758-60 (quoting *Brown v. Reed*, 165 S.E.2d 394, 396 (Va. 1969)).

As pleaded in the Complaint, Weidman's claimed heart attack and accompanying emotional distress were a "direct result" of the "hostile and confrontational" Performance Improvement meeting he claims to have had with Defendant Weldon on October 24, 2012. (Appx. at 20-21, ¶ 22.) Such claimed injuries are "injuries by accident" in the course of his employment under the VWCA, as, based upon Weidman's own pleading, they can be traced to an "identifiable incident or sudden precipitating event" that took place at work, in connection with his employment. *See Middlekauf v. Allstate Ins. Co.*, 439 S.E.2d 394, 396 (Va. 1994) (internal quotation marks and citation omitted). This conclusion is bolstered by several Virginia Court of Appeals decisions involving

similar workplace injuries. *See, e.g.*, *Va. Harvestore, Inc. v. Straatmeyer*, Civ. A. No. 0957-92-4, 1993 WL 44566, at *1-2 (Va. Ct. App. Feb. 23, 1993) (holding that employee's heart attack suffered at work immediately after entering an oxygen-deprived silo was an "injury by accident"); *Kjellstrom & Lee, Inc. v. Saunders*, 594 S.E.2d 281, 284 (Va. Ct. App. 2004) (affirming decision that an employee's heart attack was a compensable injury).

In his briefing, Weidman attempts to rewrite the allegations in his Complaint to evade the workers' compensation bar by claiming the heart attack was not the "direct result" of the October 24, 2012 workplace confrontation, but, instead, happened before work while he was still at home, as a result of cumulative workplace stresses over the course of several years. (Br. of App. at 20-21, 38-40.) His Complaint, however, expressly states otherwise: "During the meeting, Weidman suffered a heart attack as a direct result of the stress which Weldon maliciously inflicted upon him." (Appx. at 20-21, ¶ 22.) Weidman should not be permitted to attack the District Court's ruling on the basis of new and contrary factual allegations. *See Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) ("[N]otice pleading requires generosity in interpreting a plaintiff's complaint. But generosity is not fantasy. We must read the complaint as plaintiff writes it[.]"); *see also Givens v. O'Quinn*, 121 F. App'x 984, 987 (4th Cir. 2005) (recognizing that "a court's duty to liberally construe a plaintiff's complaint in the

face of a motion to dismiss is not the equivalent of a duty to re-write it") (citations omitted).

Weidman's reliance upon *Teasley v. Montgomery Ward & Co.*, 415 S.E.2d 596, 598 (Va. 1992) is unavailing.  (Br. of App. at 42-43.)  While the *Teasley* court recognized that "purely psychological disabilit[ies] resulting from disagreements over managerial decisions and conflicts with supervisory personnel" are "ordinarily" not compensable, the facts and circumstances in *Teasley* are easily distinguishable.  *Teasley*, 415 S.E.2d at 598.  In *Teasley*, the employee claimed to suffer only psychiatric injury (post-traumatic stress disorder) that was diagnosed well after a workplace confrontation.  Here, by contrast, Weidman's Complaint describes a physical injury (a heart attack), in addition to emotional distress, he claims to have suffered on October 24, 2012 as a "direct result" of the stress he claims to have been subjected to at the meeting that day by Defendant Weldon.

Indeed, many courts have held that claims seeking recovery for emotional and/or physical injuries allegedly resulting directly from similar workplace confrontations – whether styled as Intentional Infliction, assault and battery, or some other tort – are injuries by accident in the course of employment and, therefore, are barred by the VWCA's exclusive remedy provisions.  *See, e.g.*, *Miller v. Wash. Workplace, Inc.*, 298 F. Supp. 2d 364, 371 (E.D. Va. 2004) (dismissing various intentional tort claims against his employer and a co-worker as

37

barred by the VWCA's exclusive remedy provisions); *Sutter*, 932 F. Supp. at 758; *Ortiz*, 2011 U.S. Dist. LEXIS 85463, at *19-20 (barring Intentional Infliction claim); *Schrembs v. Chick-Fil-A, Inc.*,  Civ. A. No. 91-CA-1565-A, 2001 U.S. Dist. LEXIS 26224, at *7 (E.D. Va. Nov. 30, 2001) (barring Intentional and Negligent Infliction, as well as assault and battery and false imprisonment claims).

Therefore, in addition to the other infirmities previously noted, the tort claims in Counts II and III, arising from the injuries allegedly caused by the October 24, 2012 workplace confrontation with Defendant Weldon, are also barred by the VWCA.

## F.   WEIDMAN FAILS TO STATE A CLAIM FOR WRONGFUL DISCHARGE/ BREACH OF CONTRACT

The District Court properly ruled that the Complaint's allegations did not rebut the presumption of at-will employment and failed to identify a public policy statute that was violated by Weidman's discharge.  (Appx. at 386-87.)

Count IV appears to contain two separate claims: (1) a common law claim for wrongful discharge in violation of Virginia public policy because Weidman was allegedly fired in retaliation for reporting and refusing to assist with unlicensed pharmacies at ExxonMobil; and (2) a breach of contract claim, asserting that his discharge violated an alleged term of an employment contract. (*Id*. at 24, ¶ 38.)  Neither one states a legally cognizable claim.

1.    **Weidman's wrongful discharge claim fails because he has not identified, and cannot identify, any Virginia statute with a public policy that was violated by his discharge**

Virginia adheres to the employment at-will doctrine, which permits either party in an employment relationship to terminate the relationship at its discretion at any time, for any reason. *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 916-17 (Va. 1987). The Virginia Supreme Court has recognized a very "narrow exception" to the at-will rule, "limited to discharges which violate public policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Id.* at 918; *see also Bowman v. St. Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985).

Virginia courts have consistently emphasized the narrow and restrictive application of the public policy, or "*Bowman*," exception. *See, e.g., Miller,* 362 S.E.2d at 918 (holding that the exception is "not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests"); *Mitchem v. Counts*, 523 S.E.2d 246, 252 (Va. 2000) ("We have narrowly construed the public policy exception to [the at-will employment] doctrine, and we have applied that exception in few instances."); *Leverton v. Alliedsignal, Inc.*, 991 F. Supp. 486, 493 (E.D. Va. 1998) ("the Supreme Court of Virginia has been at considerable pains to tightly restrict" the *Bowman* doctrine). Thus, Virginia law does not recognize a common law "whistleblower," or

retaliatory discharge, claim. *Dray v. New Mkt. Poultry Prods., Inc.*, 518 S.E.2d 312, 313 (Va. 1999).[12]

To establish a *Bowman* claim, a plaintiff must identify "*specific* Virginia statutes in which the General Assembly ha[s] established public policies that the former employers had contravened." *Lawrence Chrysler Plymouth Corp. v. Brooks*, 465 S.E.2d 806, 808-09 (Va. 1996) (emphasis added). In *Lawrence Chrysler*, the court rejected a mechanic's claim based on his discharge for refusing to repair a car in a manner he deemed unsafe. The employee stated no viable *Bowman* claim because he "does not specify what precise statute" he would have violated by repairing the car as the employer instructed or the statute that the employer contravened by discharging him for refusing to do the work. *Id.* at 809.

Moreover, not all Virginia statutes can serve as the basis for a *Bowman* claim. *See City of Va. Beach v. Harris*, 523 S.E.2d 239, 245-46 (Va. 2000); *see also Rowan v. Tractor Supply Co.*, 559 S.E.2d 709 (Va. 2002). Instead, the Virginia statute must either (i) explicitly state that it reflects the "public policy of the Commonwealth" or (ii) be specifically "designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general[,]" and

---

[12] Notable by analogy, in the context of Title VII retaliation claims, the U.S. Supreme Court recently imposed elevated standards for proving causation, in large part to prevent poor performing employees from using unfounded claims of retaliation to forestall their employer's lawful employment actions against them. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532-33 (2013).

thereby establishing a public policy that has been violated by the discharge. *Harris*, 523 S.E.2d at 245 (internal quotation marks and citation omitted). If successful in identifying a Virginia statute with the requisite public policy, a plaintiff must then show he or she is "a member of the class of individuals that the specific public policy is intended to benefit[.]" *Id.*

### a. Weidman fails to identify any Virginia statute in the Complaint

Weidman's Complaint failed to identify *any* Virginia statute containing a public policy that ExxonMobil allegedly contravened in terminating his employment. That alone is fatal to Weidman's claim. *See, e.g., Lawrence Chrysler Plymouth Corp.*, 465 S.E.2d at 809 (dismissing wrongful discharge claim because plaintiff failed to identify a specific statute); *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 452 (E.D. Va. 2002) (dismissing wrongful discharge with prejudice on the grounds that plaintiff "has not satisfied the threshold requirement that he 'identify' a Virginia statute that expresses a public policy that the defendants violated by terminating him").

### b. The statutes identified in Weidman's briefing at the trial court level do not contain the sufficient public policy to support a *Bowman* claim

Although not in the Complaint, Weidman's briefing at the trial court, and fleetingly in his appellate brief, identified two Virginia statutes that he claims contain the requisite public policy necessary for a *Bowman* claim: Va. Code §§

41

54.1-3310 & 54.1-3435.  (Br. of App. at 22-23.)  Even if the Court considers these statutes, which it need not do, Weidman's wrongful discharge claim still fails for two reasons: (i) the statutes do not contain the requisite public policy; and (ii) Weidman does not fall within the class of individuals the statutes are designed to protect.

Indeed, the statutes cited by Weidman have <u>never</u> been held to support a *Bowman* claim, and they confer no right or obligation upon Weidman.  Likewise, these statutes do not purport to reflect the public policy of Virginia, and are akin to other statutes found insufficient to establish a *Bowman* claim.  *See Harris*, 523 S.E.2d at 245.  Even assuming, *arguendo*, that these statutes contain the necessary public policy requirements (which they do not), Weidman's claim still fails because he is not "a member of the class of individuals" that the public policy is intended to benefit.  *Id*.

Both statutes are encompassed within Title 54.1, Subsection III, which is titled, "Professions and Occupations Regulated By Boards Within the Department of Health Professions."  Va. Code § 54.1-3310 provides that persons engaging in pharmacy activities – *i.e.*, dispensing medication and compounding drugs – must be licensed by the Board of Pharmacy.  Va. Code § 54.1-3435 provides that it is unlawful for "any person to engage in the wholesale distribution of prescription drugs in this Commonwealth without a valid unrevoked license issued by the

42

Board" and also lists the administrative requirements for applying for and maintaining such a license to engage in wholesale distribution of prescription drugs.

The clear intent of these statutes is to establish and maintain licensing requirements for persons engaged in pharmacy-related activities, such as dispensing drugs or the wholesale distribution of drugs. The statutes are designed to protect pharmacy <u>customers</u> who may be impacted by receiving medications from an unlicensed/unqualified individual or distributor. There is nothing to suggest that the statutes seek to protect individuals like Weidman – *i.e.*, an employee who reported what he believed to be the operation of illegal pharmacies. Moreover, neither statute gives Weidman a "statutorily-created right" that ExxonMobil interfered with by terminating his employment, nor do the statutes confer a "statutorily-imposed duty" upon Weidman to report alleged violations of the law. *See Storey*, 207 F. Supp. 2d at 451. Accordingly, Weidman is not "a member of the class of individuals" that the alleged public policy is intended to benefit.

Weidman's theory is similar to that rejected in *Lucker v. Cole Vision Corp.*, Civ. A. No. 7:05CV00126, 2005 WL 2788882 (W.D. Va. Oct. 26, 2005). In *Lucker*, the plaintiff alleged he was fired for refusing to participate in a misleading, fraudulent, and deceptive advertising scheme by his employer, an optical retail

store.  *Id*. at *1.  He cited Va. Code. § 54.1-111(A)(8), which prohibits an optician from violating any statute or regulation governing the practice of optometry.  *Id*. at *7-8.  Even assuming the statute contained the necessary public policy, the court held that the plaintiff employee was "not within the protective reach of the statute because he is not within the public group of people the statute seeks to protect from unregulated professions or occupations."  *Id.* at *8.  The court in *Lucker* also ruled that an alleged violation of the Virginia Consumer Protection Act afforded no grounds for a *Bowman* claim because, like Weidman here, the plaintiff was "not within the protective reach of the statute because <u>he was an employee and not a consumer</u>."  *Id*. at *4-7 (emphasis added); *see also Dray*, 518 S.E.2d at 313 (dismissing *Bowman* claim because the plaintiff, a meat inspector, was not within the class of individuals designed to be protected by meat inspection statutes); *Silverman v. Town of Blackstone, Va.*, 843 F. Supp. 2d 624, 627 (E.D. Va. 2011) (dismissing *Bowman* claim under state employee whistleblower act because the statute's public policy was designed to protect only *state* employees, not the *town*'s employee);  *Leverton*, 991 F. Supp. at 493 (dismissing *Bowman* claim because the plaintiff's termination "deprived him of no interest or right secured to him" by the cited statute).[13]

_____

[13] Furthermore, Weidman lodged his complaint about unlicensed pharmacies in 2009 (Appx. at 14-15, ¶¶ 7-8), yet he remained employed at ExxonMobil for another three years.  (*Id*. at 21-22, ¶ 24.)  Weidman's contention that he was fired

    **c.**      **The statutes identified in Weidman's appellate brief do not support a claim for wrongful discharge**

In his appellate brief, Weidman, for the first time in this case, identifies Va. Code §§ 40.1-51.2 and 40.1-51.2:1 as grounds for his wrongful discharge claim. (Br. of App. at 22-23.)  As previously noted, an appellant normally cannot rely upon new arguments that were not presented to the court below.  *Karpel*, 134 F.3d at 1227.  In any event, the two statutes to which Weidman now refers – which are part of the Virginia Occupational Safety and Health laws – do not support his wrongful discharge claim.

The first statute, Section 40.1-51.2, merely provides a procedure for employees to report safety concerns to Virginia occupational health and safety officials.   The second, Section 40.1-51.2:1, provides a limited administrative remedy for employees who claim to have been retaliated against for reporting occupational safety or health concerns:  "[n]o person shall discharge or in any way discriminate against an employee because the employee has filed a safety or health complaint[.]"  To take advantage of the protections of this remedy, the employee must file a complaint with the Commissioner of the Department of Labor and Industry within sixty (60) days of being subjected to adverse treatment.  Va. Code § 40.1-51.2:2(A).  If the Commissioner finds a violation and is unable to conciliate,

---

in retaliation for a complaint made three years earlier hardly seems "plausible on its face" as required by *Twombly*.  550 U.S. at 570.

45

the Commissioner must bring an action in a Virginia circuit court seeking to restrain the violation and obtain relief for the employee. *Id*. Only if the Commissioner refuses to file a charge in circuit court may the employee bring an action in circuit court. *Id*. § 40.1-51.2:2(B).

This limited administrative remedy is of no help to Weidman because it provides the exclusive remedy available for employees who believe they were wrongfully disciplined for reporting occupational health or safety problems. Under Virginia law, "whe[n] a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *Sch. Bd. of City of Norfolk v. Giannoutsos,* 380 S.E.2d 647, 649 (Va. 1989); *see also Vansant & Gusler, Inc. v. Washington*, 429 S.E.2d 31, 33 (Va. 1993) (same).

Following this principle, one Virginia court has expressly held that Section 40.1-51.2:2 provides the <u>exclusive</u> remedy for violations based on Va. Code § 40.1-51.2:1, and, therefore, cannot serve as the basis for a *Bowman* claim. *See Judy v. Nat'l Fruit Prod. Co.*, 40 Va. Cir. 244, 245 (City of Winchester 1996). Thus, even if the purported violations that Weidman claims to have reported were within the scope of these statutes, he, like the plaintiff in *Judy*, cannot rely upon them as the basis for a *Bowman* claim.

46

Moreover, Weidman never claimed to have filed a formal complaint with Commissioner of the Department of Labor and Industry within 60 days of any alleged violation – a statutory prerequisite even to the limited administrative remedy available under Code § 40.1-51.2:2(A) ("The employee shall be <u>prohibited</u> from seeking relief under this section if he fails to file such complaint within the 60-day time period") (emphasis added); *see also Bass v. E.I. Dupont De Nemours & Co.*, 28 F. App'x 201, 205 (4th Cir. 2002) (dismissing wrongful discharge claim because plaintiff failed to satisfy statute's requirements before filing suit).

In sum, the District Court correctly ruled that Weidman had stated no claim for wrongful discharge in violation of Virginia public policy.

## 2. Weidman's employment was "at will" and thus there was no implied contract between him and ExxonMobil

Weidman's contract-based wrongful discharge arguments are equally unavailing.  As noted above, "Virginia courts have strenuously adhered to the *presumption* of at-will employment."  *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995) (emphasis added); *see also Cnty. of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001) ("Virginia strongly adheres to the common law employment-at-will doctrine.").  Where there is no specific duration of employment, there is "a rebuttable presumption that the hiring is terminable at will."  *Miller*, 362 S.E.2d at 917.  Accordingly, "unless an employee identifies a statute, custom, or contract fixing the duration of employment," the employment relationship is presumed to

47

be "at will." *Calquin v. Doodycalls Fairfax VA LLC*, No. 1:09cv543 (AJT/IDD), 2009 U.S. Dist. LEXIS 83936, at *5 (E.D. Va. Sept. 11, 2009).

The strong presumption of at-will employment can be overcome only if the plaintiff sufficiently demonstrates "that the employment is for a definite, rather than an indefinite, term." *Progress Printing Co. v. Nichols*, 421 S.E.2d 428, 429 (Va. 1992) (citation omitted). This requires a plaintiff to demonstrate "absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement." *Miller*, 362 S.E.2d at 917 (quoting *Town of Vinton v. City of Roanoke*, 80 S.E.2d 608, 617 (Va. 1954)). Whether the at-will presumption has been rebutted is "one of law for the court to decide where there is no fair inference of a specific intended duration or the prerequisite consideration necessary to establish a for-cause employment relationship." *Nguyen*, 44 F.3d at 238 (citation omitted).

Here, Weidman alleges that the anti-retaliation policy of the Standards of Business Conduct somehow created an "implied unilateral contract" that guaranteed he would not be discharged for reporting violations of policy and the law. (Appx. at 23, ¶ 34.) This is nothing more than a bare legal conclusion and "formulaic recitation of the elements of a cause of action" that, under *Twombly*, "will not do." 550 U.S. at 555. Weidman did not attach the Standards of Business Conduct to the Complaint, nor did he attach any other purported agreement that

48

would establish a contract sufficient to overcome the presumption of at-will employment. Appellees, however, submitted the Standards of Business Conduct to the District Court (Appx. at 129-56), along with three other documents that were integral to Weidman's claims relating to the purported terms and conditions of his employment. (Appx. at 157-69.)[14]

Nothing within the Standards of Business Conduct undermines the strong presumption of an at-will employment relationship. (Appx. at 129-56.) Among other things, the document does not purport to constitute a contract of employment. Moreover, Weidman's arguments are completely at odds with three documents he executed contemporaneously with, and well after, his receipt of the Standards of Business Conduct – documents in which he conclusively acknowledges his status as an "at-will" employee. (*Id*. at 157-69.)

Weidman signed the first document upon hire in 2007. (*Id*. at 157-61.) Section 5(a) of the document states, "I recognize that *I am an employee at will*. I may terminate my employment at any time and the Company may terminate my employment at any time, with or without cause." (*Id*. at 159) (emphasis added).

---

[14] Weidman did not object to the District Court's consideration of these additional documents. Moreover, as "documents central to [the] plaintiff's claim" or "sufficiently referred to in the complaint," the District Court properly considered them without converting the Rule 12(b)(6) motion into one for summary judgment. *See Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 617 (E.D. Va. 2010) (citations omitted); *see also Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006).

49

The second and third documents were the Performance Improvement Plans issued to Weidman in October 2011 and June 2012.  (*Id*. at 162-169.)  Weidman signed each document acknowledging that his employment, "both during and after the conclusion of the performance improvement period, will remain at-will."  *Id*. at 165.

It is well established that "[a] clear disclaimer . . . effectively negates any other provisions or attempts to rebut the at-will presumption."  *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 454 (4th Cir. 2004) (applying Virginia law) (citations omitted); *see also Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1236 (E.D. Va. 1996) (relying on a disclaimer in an employment manual to find that plaintiffs were "clearly at-will employees").  Thus, it is indisputable that Weidman's employment with ExxonMobil was "at will" and, therefore, he cannot state a claim for wrongful discharge based on breach of contract.

Weidman cited two cases for the proposition that whether he is a contractual employee is a factual question for a jury's determination, *Barger v. Genenral Electric Co.*, 599 F. Supp. 1154 (W.D. Va. 1984), and *Frazier v. Colonial Williamsburg Foundation*, 574 F. Supp. 318 (E.D. Va. 1983).  (Br. of App. at 48-49.)  Those cases are distinguishable because the plaintiffs in them, unlike Weidman here, did not sign any written acknowledgement of at-will employment. Thus, those cases presented a factual dispute about the employees' at-will status –

a dispute that is not present here given Weidman's admitted status as an at-will employee.   The District Court properly dismissed Weidman's claim.

## G.   THE DISTRICT COURT PROPERLY DENIED WEIDMAN'S MOTION FOR REMAND

The District Court properly denied Weidman's Motion to Remand on the grounds that the three non-diverse Defendants (Monsivaiz, Sampsell and Hasson) were fraudulently joined, thereby allowing the Court to exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

Weidman asserted three claims – fraud, Intentional Infliction, and personal injury – against the non-diverse Defendants.   Analyzing the limited allegations against each of these non-diverse Defendants reveals that Weidman failed to allege any viable basis for recovery.

### 1.    Standard for fraudulent joinder

The "fraudulent joinder" doctrine permits the Court to disregard the citizenship of certain defendants if their joinder to a lawsuit amounts to an attempt to evade diversity jurisdiction.  *See, e.g.*, *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

"Fraudulent joinder" actually does not require any showing of fraud.  *AIDS Counseling & Testing Ctrs. v. Grp. W TV, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (internal quotation marks and citations omitted).   Rather, as the District Court properly ruled, it can be established where, as here, the plaintiff's allegations

are so thin that there is "no possibility" that they establish a cause of action against a non-diverse party. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citation omitted). "This possibility, however, must be reasonable, not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (cited with approval in *Boss v. Nissan N. Am., Inc.*, 228 F. App'x 331, 335 (4th Cir. 2007)).

The "no possibility" standard is not to be taken literally, nor is it to be applied mechanically. *Pham v. Bank of N.Y.*, 856 F. Supp. 2d 804, 809 (E.D. Va. 2012). Rather, the question is whether there is any reasonable basis for predicting that state law might impose liability against the non-diverse defendant based on the allegations made. *Id*. If not, then the Court should disregard the non-diverse defendant in its diversity-of-citizenship analysis. *Id*. Although the standard of review for fraudulent joinder is more favorable to a plaintiff than the standards on a motion to dismiss, the two standards are similar. *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005).

The burden to establish fraudulent joinder may be high, but decisions from this Court and the District Court confirm that a defendant is properly deemed to be fraudulently joined where, as here, the plaintiff failed to allege any viable basis for recovery against them. *See, e.g.*, *Flores v. Ethicon, Inc.*, 563 F. App'x 266, 269 (4th Cir. 2014) (affirming decision that non-diverse defendants were fraudulently

joined, finding that "[t]he only theory of liability that Flores maintains on appeal, negligent failure to warn, is not alleged in the complaint and was never argued before the district court"); *Turner v. JP Morgan Chase Bank, N.A.,* 543 F. App'x 300, 301 (4th Cir. 2013) (affirming decision that non-diverse defendants were fraudulently joined because the claim against them was barred by the statute of limitations); *Bessinger v. Food Lion, LLC*, 115 F. App'x 636 (4th Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005) (affirming decision that store managers cannot possibly be liable under South Carolina Unfair Trade Practices Act for simply pulling meat from shelves); *Kenny v. Bank of Am., N.A.*, Civ. A. No. 4:11CV120, 2011 WL 6046452, at *3-4 (E.D. Va. Dec. 5, 2011) (holding that plaintiff failed to establish either of two counts against non-diverse defendant where plaintiff failed to name non-diverse defendant in one count and failed to allege sufficient facts in the other); *Clark v. Nat'l Shipping Co. of Saudi Arabia*, 552 F. Supp. 2d 576, 578 (E.D. Va. 2008) (holding that no negligence action was permitted against terminal operator because it had no duty to inspect cargo loading operation or to warn of possible dangerous condition); *17th St. Assocs., LLP v. Mkt. Int'l Ins. Co.*, 373 F. Supp. 2d 584, 599-602 (E.D. Va. 2005) (holding that "this is a garden variety coverage claim against an insurer cloaked in the garb of a complex business tort for the tactical purpose of defeating diversity").

2.    **Allegations against non-diverse Defendants**

As explained below, the relevant facts for determining whether Defendants Monsivaiz, Sampsell, and Hasson were fraudulently joined are the facts alleged in the Complaint at the time of removal against each non-diverse Defendant – not any new post-removal facts salted into Weidman's various motions or briefs.  The threadbare facts actually alleged in the Complaint against these three Defendants are as follows:

a.    **Gerard Monsivaiz**

Other than in the caption, Weidman fails to mention Monsivaiz <u>anywhere</u> in the Complaint.  In other words, Weidman does not make a single specific factual allegation against Monsivaiz.

b.    **Jeremy Sampsell**

All that Weidman alleges about Sampsell is that he participated in some unspecified way in the so-called "sham" investigation of Weidman's complaint in September 2011 about alleged retaliatory actions by Johnson and ExxonMobil's Medical Department.  (Appx. at 19, ¶ 20.)  Notably, Weidman accuses the other investigator, Carr, of lying to him and calling Weidman a "poor performer."  (*Id*.) By contrast, the Complaint mentions nothing offensive or bothersome that Sampsell allegedly did, other than to play an unexplained part in the investigation. (*Id*.)

54

c. **Meghan Hasson**

Weidman's Complaint alleges that, beginning in September or October 2011, Defendant Weldon held an "inordinate number of meetings" with Weidman to discuss "Performance Improvement plans" that ExxonMobil issued to him. (*Id*. at 19-20, ¶ 21.)  According to the Complaint, Weldon's (<u>not</u> Hasson's) objectives were to "harass, humiliate, threaten, and cause severe emotional distress" to Weidman and to result in his discharge.  (*Id*.)  Hasson, a member of the Human Resources Department, simply attended those performance review meetings and is not alleged to have said anything negative about Weidman.  (*Id*. at 19-20, ¶¶ 21-22.)

Then, in mid-December 2012, Weidman asserts that Hasson attended a meeting in which Weldon (<u>not</u> Hasson) informed Weidman that his performance improvement plan would continue beyond the end of the year.  (*Id*. at 21, ¶ 23.)  Finally, on January 22, 2013, Hasson attended a meeting in which Defendant Jones (<u>not</u> Hasson) informed Weidman that ExxonMobil was terminating his employment.  (*Id*. at 21-22, ¶ 24.)  Thus, at most, the Complaint alleges only that Hasson attended meetings and allegedly admonished Weldon – not Weidman – at one of the meetings (conduct which arguably makes her a witness but not a defendant).

55

**3.    The Court should ignore additional facts asserted in Weidman's brief**

Recognizing the scanty and insufficient allegations about Monsivaiz, Sampsell, and Hasson, Weidman improperly attempts to introduce new facts about each individual in his appellate brief.

The question of whether a state court complaint can be removed to federal court is based upon the well-pleaded complaint as originally filed at the time of removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (holding that removal is "to be determined according to the plaintiffs' pleading at the time of the petition for removal") (citations omitted).  Accordingly, a "plaintiff must not be allowed to re-plead the complaint [after removal] in an attempt to divest the court of jurisdiction by hindsight." *McCoy v. Norfolk So. Ry.*, 858 F. Supp. 2d 639, 642 n.1 (S.D. W.Va. 2012); *see also Cavallini v. St. Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) ("removal jurisdiction should be determined on the basis of the state court complaint at the time of removal, and . . . a plaintiff cannot defeat removal by amending it"); *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (relevant pleading for fraudulent joinder is complaint existing at time of removal).

This Court, therefore, must resolve the fraudulent joinder issue on the basis of the Complaint as originally filed by Weidman – not the re-engineered facts in his Motion to Remand or subsequent court filings.

## 4.    No possibility of recovery against non-diverse Defendants

Only the first three of the Complaint's four counts – fraud, intentional infliction of emotional distress, and "personal injury" – are asserted against the three non-diverse Defendants; the "wrongful discharge" claim in Count IV is only levied against ExxonMobil.   (Appx. at 22-24.)   However, as established  in Sections V(B)-(F), *supra*, Weidman's Complaint fails to state any legally viable claim against any of the Defendants.  The deficiency is even more pronounced with regard to the three non-diverse defendants, given the extremely minimal to non-existent facts alleged about their purported conduct.   There is simply no possibility Defendants Monsivaiz, Sampsell, or Hasson could be held liable based upon the exceedingly bare facts alleged.

The Court can dispose quickly of Monsivaiz, the paradigmatic fraudulently joined Defendant who appears nowhere except in the caption of the Complaint. *See*, *e.g.*, *Cavallini*, 44 F.3d at 260-61 (individual fraudulently joined where the Complaint does not mention him by name except in the caption and introductory paragraph); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (fraudulent joinder of individual defendant because "he is not mentioned in the complaint, other than in this introduction").  Weidman alleges in his brief, without providing case support, that Monsivaiz is the supervisor of Defendant Hasson and, therefore, "must" be liable under the doctrine of *respondeat superior*.

(Br. of App. at 35.) Even if adequately pled in the Complaint (which it is not), this still would not be enough to support any of the three causes of action against Monsivaiz. Weidman did not make a single assertion as to what Monsivaiz actually did. Moreover, individuals cannot be subjected to liability just by carrying a certain job title and being included nominally in the Complaint based on speculation and conclusory belief. Moreover, while the principle of *respondeat superior* may render an employer (such as ExxonMobil here) liable for tortious conduct of its employees, the doctrine does not subject co-employees to such vicarious tort liability as Weidman incorrectly asserts.

While Weidman alleged a bit more against Sampsell and Hasson – with an emphasis on "bit" – the minimal conduct he assigns to them has no possibility of supporting intentional tort claims of fraud (which must be pleaded with particularity), intentional infliction of emotional distress (which is highly disfavored), or "personal injury."

According to the Complaint, Sampsell participated in an investigation into Weidman's internal complaint of retaliation by another ExxonMobil employee. (Appx. at 19, ¶ 20.) Weidman's brief goes on to make the conclusory assertion that the so-called "sham" investigation in which Sampsell played some unspecified role was somehow part of a malicious conspiracy to make Weidman's life miserable and drive him from his employment. (Br. of App. at 35-36.) But the

core factual assertion is that Sampsell did <u>nothing</u> but participate in some unknown aspect of an allegedly incompetent "sham" investigation. That is all. There are no details or specifics whatsoever of what Sampsell may have done that would (or could) give rise to some kind of tort liability, let alone the extraordinary tort claims that Weidman asserts here. As to fraud, there is no specific misrepresentation of fact made by Sampsell upon which Weidman claims to have reasonably relied to his detriment. Nor is there any "outrageous" conduct by Sampsell necessary for Intentional Infliction, let alone any conduct that could have been the legal cause of Weidman's claimed injuries – his heart attack and associated emotional distress. Indeed, the heart attack – which is also the "personal injury" claimed in Count III – was not alleged to have been caused by Sampsell, but, instead by Weldon's "hostile and confrontational" conduct at the October 24, 2012 employment meeting.

As to Hasson, the Complaint alleges she was an attendee in employment meetings – benign conduct that has no hope of supporting a viable claim against her for fraud, intentional infliction of emotional distress, or personal injury. In his brief, Weidman tries to expand on his pleadings by making conclusory allegations that Hasson's role was to "assist in the eventual dismissal of the Plaintiff" and "continue the disciplinary meetings of the Plaintiff indefinitely[.]" (*Id*. at 31.) Although the Court should not consider these new briefing allegations, they come

59

nowhere close to establishing fraud, intentional infliction of emotional distress, or "personal injury" for the same reasons summarized above regarding Defendant Sampsell.

Perhaps cognizant of his threadbare (and, in some cases, non-existent) allegations against the non-diverse Defendants, Weidman resorts to arguing that each played "some" role in his dismissal and resulting damages. (*Id*. at 37). It is irrelevant whether their actions played "some" role in Weidman's dismissal (which they are not even being sued for) or his claimed damages. Rather, all that is relevant is whether their alleged conduct could possibly satisfy the necessary elements for fraud, Intentional Infliction, or "personal injury" under Virginia law. Weidman utterly fails in this regard. Merely being a supervisor (Monsivaiz), participating in an investigation (Sampsell), and sitting in on a termination meeting (Hasson) cannot support viable claims for fraud, Intentional Infliction, or "personal injury."

Accordingly, the District Court correctly ruled that the three non-diverse Defendants were fraudulently joined, allowing them to be disregarded for jurisdictional purposes.[15]

---

[15] Weidman cites *Duncan v. Exxon Mobil*, 968 F. Supp. 2d 996 (E.D. Ark. 2013), an Arkansas case in which a Motion for Remand was granted, which is entirely distinguishable from this case. As an initial matter, *Duncan* was analyzed under the Eighth Circuit standard for fraudulent joinder, which differs from this Circuit. *Id*. at 999. Nonetheless, in *Duncan*, the Court found that the plaintiff had

60

### 5.    Personal jurisdiction has no bearing on the removal

Weidman asserts that removal was somehow improper because the Virginia state court had personal jurisdiction over Appellees under the *International Shoe* standards. (Br. of App. at 28-31.)

This argument is a non-sequitur. Whether the Virginia state court had *personal jurisdiction* over all or any of the Defendants is irrelevant to whether the District Court could exercise *subject matter jurisdiction* over the case upon removal by the Appellees. Under 28 U.S.C. §§ 1332(a) and 1441(b), Appellees had an independent statutory right to remove the case and have it adjudicated in the District Court given that (i) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (ii) Plaintiff's state of citizenship is different from the states of citizenship of Defendants, excluding the fraudulently joined Defendants. Issues about "minimum contacts" or other elements of personal jurisdiction are absent from the statutory requirements for removal or exercise of subject matter jurisdiction, and, therefore, have no bearing on the issues presented here.

---

alleged sufficient facts to state a claim against the non-diverse defendant. *Id*. at 1001. That is not the case here because, as discussed previously, Weidman is far from stating a viable claim against any of the three non-diverse defendants.

61

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the District Court's decision in all respects.

Respectfully submitted,

s/ *Thomas P. Murphy*

Thomas P. Murphy (VSB No. 30765)
Arthur E. Schmalz (VSB No. 36014)
Ryan M. Bates (VSB No. 74661)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
(703) 714-7400 (telephone)
(703) 714-7410 (facsimile)

*Counsel for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,858 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word (Version 2010) in 14-point Times New Roman.

Respectfully submitted,

s/ *Thomas P. Murphy*

Thomas P. Murphy (VSB No. 30765)
Arthur E. Schmalz (VSB No. 36014)
Ryan M. Bates (VSB No. 74661)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
(703) 714-7400 (telephone)
(703) 714-7410 (facsimile)

*Counsel for Defendants-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 4, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I also certify that, on the same day, I served a copy of the attached Brief, by first-class mail, on:

> Mr. Richard C. Weidman, *pro se*
> 9505 Neuse Way
> Great Falls, Virginia 22066


Respectfully submitted,

s/ *Thomas P. Murphy*

Thomas P. Murphy (VSB No. 30765)
Arthur E. Schmalz (VSB No. 36014)
Ryan M. Bates (VSB No. 74661)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
(703) 714-7400 (telephone)
(703) 714-7410 (facsimile)

*Counsel for Defendants-Appellees*

64